Good morning. May it please the Court, my name is John Michael and I represent Hendrick and Lettie Smeding, the appellants in this matter. I'd like to start by bringing the Court up to date regarding the alter ego claims. There have been some developments that may narrow the focus of the issues in this appeal. Since this appeal was filed, this Court has held that the alter ego claims that were at issue are in fact owned by a creditor, not by the trustee. The Court has held that they were owned by Ahcom, which has pursued those claims on its own behalf. And there was a trial this past summer on those claims. And the defendants, the Smedings, prevailed in that trial. So the focus of this appeal has been narrowed somewhat to the issue of the sale of the breach of fiduciary duty claim by the trustee to Ahcom. It's either Ahcom or Mr. Hacking. I apologize, I have a little cold still. It was either sold to Ahcom or Mr. Hacking. It's not clear. The order from the Court says it's being sold to Ahcom. The actual assignment agreement is between Ahcom and Mr. Hacking and the trustee. In any event, it's the breach of fiduciary duty claim that is now the focus of this appeal, at least from our point of view. Now, I'd also like to clarify what the subject of the trustee's motion for approval of the sale was. The claims to be sold to the Smedings, pursuant to the notice of hearing that was filed by the trustee, were the alter ego claim that we thought at the time was owned by the trustee. And there were certain breach of contract and business tort claims that belonged to Nuttery Farms that were also the subject of the sale. There was no mention in the notice of sale or notice of the hearing of a breach of fiduciary duty claim. The offer by Ahcom or Mr. Hacking to buy the breach of fiduciary claim was raised for the first time in Ahcom's objection to the proposed sale, which was filed only eight days before the hearing. Obviously, that didn't constitute. So what? I'm sorry? So what? Well, that didn't constitute a motion. So what? I mean, let's get practical here. Are you telling me that Ahcom doesn't care anymore and isn't going to proceed with the bid? Are you telling me that there's a procedural default, so you want to go back and repeat the same process, but we have exactly the same people with interest in exactly the same claims? I mean, I'm not sure what the practical import of what you're telling me is. Well, the practical import is that if the Smettings had had proper notice that the breach of fiduciary duty claim was going to be sold at the hearing, they could have prepared to participate in an auction. They could have said something at the hearing. I mean, was there any doubt at that time what was being sold? Yes, there was at that time doubt about what was being sold because there was no notice that the breach of fiduciary duty claim was going to be sold. You're basically, as I understand it, the difficulty is that they lay out a procedure for notice and two separate procedures, one for auction and one for objection. And as I understand it, you're simply saying you can't really have an auction without following the auction procedures, which is to put down the deposit and go forward. Is that right? That's only part of it, Your Honor. The Bankruptcy Rule 2002 requires that there be 20 days' notice of a motion to sell property of the estate. That rule also requires that the property to be sold has to be adequately identified in the notice. Okay. Well, now let's go back to the practical. Let's just say that we agree with you and it goes back and they give notice and people make objections. And if they want to buy the property, then they have to put down a deposit. Is that right? Or if they want to put the claim? Either that or it's properly noticed that there's a chance to overbid at the hearing. To overbid. Right. Which was absent from the notice that was given by the trustee. Actually, there would be a rebidding process. There would be a rebidding process that would pit the Smettings against Ockham and other creditors. Right. That would probably result in a higher price for the cause of action, regardless of who it gets sold to, which is a benefit to the creditors of the estate of which the Smettings are won. I mean, let's say it's bid up to $200,000. So why didn't somebody say something at this hearing? Well, the objection that we made was in writing. It was provided to the Court two days before the hearing. Yes. That goes to whether you preserved your right on the objection. I understand that. But why didn't somebody say? It wouldn't have taken very much. It was a very, very short hearing. It doesn't appear that the judge shut anything down, prevented anybody from standing up or saying anything. Why didn't somebody say, at the very least, we'd like to renew our objection on the record, Your Honor? Or, two, Your Honor, something's unfair here. We didn't know that the fiduciary duty claim was a part of this. I'd like to – I need a continuance in order to discuss with my clients, because we may be able to overbid Ockham if that's the way you wish to proceed. But we protest that that's the way you should proceed. I mean, there's a half a dozen different ways that you could have said something and nobody said a thing. I understand that. I wasn't at the hearing. I don't know why nothing was said at the hearing, but I do know that the record was preserved, the objection was provided to the judge in writing two days before the hearing. Was there an objection provided to the judge or, for that matter, anything said in your brief to us with regard to the fact that the claims were somewhat different? Which, frankly, I noticed myself at the beginning, and I wonder why nobody said anything about it. But I don't see that you said anything about it. Well, it's certainly in the objection that the Smettings filed with the court. Where? At excerpt of record page 92 at lines 23 through 25. And I can quote it for you. It's – I'll quote. By way of its objection, Ockham now attempts to usurp the trustee's business judgment and discretion and bypass a fair bidding process to seek an order from the court approving its own bid, which contained the breach of fiduciary duties.    at the time that the claim was different. And the objection, if I may say, the additional words aren't there. I saw nothing in here that suggests to me that this complaint that you're basing your argument on right now, that is, that the claims are different, was ever objected to before the bankruptcy court, was ever objected to to the district court, or was even mentioned in the briefs to us. And the defects include the fact that it did not contain any reference to a breach of fiduciary duty claim. And if the Court would like, when the hearing is over in a letter brief or whatever, I can point the Court to that that's in our reply brief. We have actually a piece of paper, don't we, where you can fill out and tell us the page citation. You can leave that with the clerk and make sure that counsel has a copy as well. I can do that, Your Honor. But the written objection that we filed actually says that we object to the Court approving Occom's bid without a properly noticed motion. And that's the bid that contained the breach of fiduciary duty cause of action. Do you want to save time for rebuttal? You have two minutes left. Up to you. Sure. I'll save two minutes for rebuttal. Thank you. Thank you. Good morning again, Your Honors. May it please the Court, my name is Monique Jewett Brewster. I'm an attorney with the firm of McConaghy and Barnier. I'm also a little sick today. I apologize for my voice. And we represent the appellee Jeffrey G. Locke, trustee in bankruptcy for the case of Curry Farms today. Your Honors, I'd just like to start by saying in a nutshell, we're here today because the appellants assert that the Bankruptcy Court abused its discretion and the District Court improperly dismissed the case, all because the motion for compromise was actually a disguised motion to sell. And without the 20-day notice required by Bankruptcy Rule 6004, and also not in accordance with the trustees' arbitrary proposed bidding procedures, which the Bankruptcy Court never approved in the first place. This argument ignores the Ninth Circuit BAF's decision in Mickey Thompson Entertainment Group, whereby the panel held that disposition by way of a compromise of a claim that property of the estate under Section 541 necessarily and simultaneously implicates both the sale provisions of Section 363B and the compromise provisions of Rule 9019A. The panel was. Kennedy. Well, what do we do about the fact that the different claims were involved in the two different bids? I understand that, Your Honor. Actually, I noted that while appellants counsel assert that the asserts that the motion was improperly noticed, both the trustees' motion starting at excerpts of records 58 and the notice thereafter indicate that all of the estate's rights in both actions were being compromised here. Now, the appellants were the principals of this corporate debtor. It bears repeating that the appellants were in the best position to know what claims belonged to the debtor and didn't disclose those when they filed the bankruptcy case in 2006. The appellants only reopened the case after the litigation with ONCOM. So the appellants were in the best position with this language, both in the trustees' motion and the notice, to be put on notice that the trustee meant to compromise all of the estate's rights in both actions. I'm a little puzzled by this notion of that the procedure for overbids, that the trustees setting up a procedure that the district court can, you know, the court can just say, well, we're not going to look at that. It's not approved. It doesn't really make a lot of sense here. So, you know, what the trustees set out were two procedures, one for overbids. In other words, if you want to bid against each other, we've got this auction process. You also might have other objections in terms of the terms of what was already offered up, and here's how you make those objections. I guess my real question is why, if they followed the procedure for objecting, which they did, why should they somehow not be able to be part of the procedure for overbids? I mean, why was an overbid done that doesn't even match the trustees' criteria? Well, Your Honor, I think, and that's a good question, I think the best way to address it is the trustee had the ability to propose certain bidding procedures in connection with this motion. But even though the bidding procedures were not met, the main point, the crux of the matter, is that these bidding procedures were never approved by the bankruptcy court in the first place. So while the trustee had an idea of how to maximize the state's recovery for these assets, the bankruptcy court, as noted in Mickey Thompson Entertainment Group and also the Souter v. Goudert case cited in the brief out of the District of Nevada, the bankruptcy court said, okay, I've gotten the objection. I've gotten the reply. I'm looking at two bids. Under Mickey Thompson, I'm not obligated to approve any formal bidding procedures. The only thing that I'm obligated to do as the court is to consider whether disposition by settlement of an asset of the estate is going to bring in more money through a competitive bidding process. But as noted by the panel in Mickey Thompson, the bankruptcy court is left, it's left to the court's discretion as to whether or not the court actually wants to impose any formal bidding procedures. So in this case the question is. And I suppose that one answer to that would be if they had simply raised their hand and said, hello, we'd like a competitive bidding process, then that issue would have been foursquare in front of the court. That's exactly what happened, Your Honor. And because counsel was actually there, not this counsel, but a counsel from their firm was there, and the crux of the matter is they never upped their offer. AWCOM offered $10,000, plus 50 percent of the net recoveries from that litigation. The Smedics never said, okay, we'll see you, and raised that. They just raised a host of arguments, and their reply filed with the court, which never, I might add, raised the issue of defective notice, of the need for fresh notice. That apparently came up later in the papers in the district court, and so that issue is really something that appears to have been waived in the bankruptcy court. But essentially, the court was looking to address your question, Your Honor. The court was looking at the two offers and said, at a very short hearing, I think this one is going to be in the estate's best interest. Does anybody object? Crickets. Crickets. There was silence. They ---- Well, there had already been a paper submitted objecting. Absolutely. So it's not exactly silence, is there? No, Your Honor, but the counsel who appeared on behalf of the appellants at that hearing failed to say, and, Your Honor, we resubmit, we urge the court to ---- Well, is there any place that requires something to be stated orally for it to count if it's already been filed in writing? I mean, what's the logic in that? The only logic, Your Honor, is to essentially avoid appeals like this, which are appeals by surprise, insofar as ---- Whoa, whoa, whoa. There's no surprise. The paper was filed. The opposition was clear. Your ---- it seems to me what you'd avoid is an appeal like this by saying, look, you can state your objection in writing. You can state it orally as long as it's on the record. Isn't that the cleaner rule? That is a very clean rule, Your Honor, and actually, I would agree that would be the cleaner rule. The issue is ---- So that seems to put an end to the argument that says they didn't object, but in fact they had objected. The issue is looking at the nature of their objections, Your Honors. As you raised during the initial argument, it was only in the reply papers and late in this case that certain arguments were made. All of the arguments that are being asserted in this appeal were not set forth in the written arguments which the Smettings submitted by writing, in writing, in the bankruptcy court. That's where we argue that this appeal is somewhat a surprise because they had every opportunity to state all of their objections to the relief being requested by the trustee, and they didn't do that. They didn't state this objection regarding defective notice in writing, and they surely didn't raise it orally at that hearing. That's why we argue if that issue was something that they wanted the bankruptcy court to consider in the context of making its determination on this motion, they should have raised it there, and if they chose not to do it in writing, they had every opportunity to raise that objection orally, and they chose not to do so. Are you sharing your time or? Yes, we are. I'll stop. Thank you. Williams. May it please the Court. My name is William Parrish. On the hearing on behalf of Alcom Limited, I wanted to clarify an issue that the Court has pointed out. The appellants never objected orally or in writing on the grounds that they had received inadequate notice. The objection was to whether or not the Court would act properly in approving the proposal submitted by Alcom. There is no charge. In what form did Alcom submit its proposal? In writing. Was there any discussion in Alcom's paper that clearly identified the claims being which Alcom proposed to purchase being somewhat different than the claims proposed in the trustee's motion? Well, Alcom's objection and proposal specifically delineated the claims that it proposed to buy, and those specific claims and notice was served on the appellant. So they had notice of them. They did not object on the adequacy of notice. And the objection filed by Alcom specifically asked the Court to approve that proposal and allow the trustee to enter into the transaction. So it's not the case where we have a written objection that preserves the issues on the appeal and simply a failure to reiterate them orally at the time of the hearing. Secondly, there is no challenge to what the Court actually did in this appeal or before the district court. No one claims in any of these appellate briefs that the Court acted improperly in any way in approving the claim other than the issue of notice. Now, there is good reason in courts to require the attend and object requirement. You can't sit idly by and invite error. This is a busy bankruptcy court. They have dozens and dozens and dozens. I want to be clear. Your current statement, what are you – I mean, you don't deny that they did, in fact, object. You're focusing, I take it, on exactly what objection they pushed forward. Exactly. Exactly. You have to make the objection to preserve the issue on appeal. They did not object on adequacy of notice, on inadequate notice, either in writing or at the court. And because of that, they have, depending on what circuit you're talking about, they lack standing or they have forfeited that claim. And with that, I'm prepared to submit it, Your Honor. Thank you. Oh, one – I should cite that the appellant's objection is found in the excerpts of the record at page 84 through 93, and there is no recitation in that objection to the adequacy of notice. Thank you. And in response to both counsel's argument that the Smettings failed to object to the notice of the sale of the breach fiduciary duty claim, I again refer the court to excerpt of record page 92 at lines 23 through 25, where the Smettings objected to the court approving Occam's bid without a properly noticed motion. That's a clear objection to the lack of notice, to the lack of a motion. So it's in the record. It was in the record before the bankruptcy court. But it really – it really – it really snacks of a very technical kind of objection, doesn't it? It's clear that you knew that something was going down. And now you've sort of said, well, it didn't give us the notice that you're supposed to. But you – it's clear that in practice, that in practical terms, you knew something was happening here. Well, what we knew was that the trustee had set out this elaborate bidding process that took up two pages. It begins to sound like a technical objection. It's one thing if you don't get notice and you don't show up to the hearing because you never knew there was – a hearing was going to be conducted, or you didn't file a bid because nobody ever sent you a notice that said bids are due up by Friday. But when you come forward and say, hey, you can't do this because you didn't give us proper notice of this, you haven't – you haven't advised anybody that you've – that you're prejudiced in any way because somehow you found out about the process here. You knew enough to go to the hearing. You knew what the district court – what the bankruptcy court was going to do. Well, there's a reason for the 20-day notice requirement, and that is to give the parties adequate time to prepare for an option. I mean, the Smittings would have had to go and arrange financing in order to do the competitive bidding. And they needed time to do that. Eight days' notice of a possible competing bid that's contained in an objection to the proposed sale going forward that adds new terms and new property to be sold does not give the parties enough time to prepare for an option. Is there anything in your briefs to us that makes any kind of reference to the argument you're now presenting? I don't think so, no. Thank you. Okay. Thank you. The case just argued is Submitter Nettery Farm v. ACOM. Thank you, counsel, for your argument this morning.
judges: McKeown, Clifton, Bybee